1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   THEON KAMBON,                              No.  2:23-CV-1765-DC-DMC-P

12                   Plaintiff,

13        v.                                    <u>FINDINGS AND RECOMMENDATIONS</u>

14   COUNTY OF SACRAMENTO, et al.,

15                   Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court is Defendants' motion to dismiss, ECF No. 16.[1]

19   Plaintiff has filed an opposition, ECF No. 19. Defendants have filed a reply, ECF No. 22.

20            In considering a motion to dismiss, the Court must accept all allegations of

21   material fact in the complaint as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007).  The

22   Court must also construe the alleged facts in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer</u>

23   <u>v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see also</u> <u>Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S.

24   738, 740 (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

25   ambiguities or doubts must also be resolved in the plaintiff's favor.  <u>See</u> <u>Jenkins v. McKeithen</u>,

26   395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by factual

27   ───────────────

28        [1]        Defendants filed this motion to dismiss before the Court conducted initial
     screening pursuant to 28 U. S. C. §1915A.

                                          1

1   allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In

2   addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See

3   Haines v. Kerner, 404 U.S. 519, 520 (1972).

4            Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

5   of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

6   notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

7   550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

8   to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

9   more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

10  allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

11  complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at

12  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

13  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

15  it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

16  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

17  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

18  to relief."  Id. (quoting Twombly, 550 U.S. at 557).

19           In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

20  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

21  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

22  documents whose contents are alleged in or attached to the complaint and whose authenticity no

23  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

24  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

25  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

26  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

27  1994).

28  / / /

1    Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

2    amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

3    curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

4

5                              **I.  PLAINTIFF'S ALLEGATIONS**

6    Plaintiff names the following as defendants: (1) County of Sacramento; (2) Jim

7    Cooper, Sheriff for Sacramento County; (3) Venessa Vaden, Captain at Sacramento County Main

8    Jail (SCMJ); and (4) Edward Yee, a Captain at Rio Cosumnes Correctional Center (RCCC). See

9    ECF No. 1, pg. 2. Plaintiff alleges violations of the Fifth Amendment, Eighth Amendment, Ninth

10   Amendment, Tenth Amendment, Fourteenth Amendment, and the "Mays Decree." Id. at 4.

11   Plaintiff's first claim is that he suffered an injury due to an unsafe environment

12   when he was held at RCCC, "around May 2023 or June 2023." Id. at 3.  Plaintiff states that he

13   notified three different deputies (not named as defendants in this action) "that the urinals and

14   toilets were leaking onto the bathroom floor making huge puddles causing a safety and sanitation

15   hazard for us inmates." Id. Plaintiff asserts that he was told by the deputies that they put a

16   maintenance request in, but the problem persisted for at least a week. Id. According to Plaintiff,

17   the wet floor caused him to fall three different times and the third instance he "hit [his] face on a

18   urinal receiving a tiny gash on [his] nose that resulted in bleeding and headaches that [he] still

19   suffer[s] from over a month later." Id. Plaintiff contends that "but for the failures of the above-

20   mentioned deputies and their supervisors to maintain a safe and healthy environment. . . I would

21   have never slipped and fell due to the water on the floor." Id.

22   In Plaintiff's second claim, he asserts that during his time at SCMJ and RCCC, he

23   was "denied [his] special dietary needs based on [his] numerous allergies." Id. at 4. At SCMJ,

24   Plaintiff claims he was "serve[d] repeatedly food that [he] is allergic to." Id. According to

25   Plaintiff, after he complained about being served this food, he "would be denied a meal

26   altogether." Id. When Plaintiff did receive meals, he claims the "food would be obviously very

27   / / /

28   / / /

3

1   old with mildewed [sic] rice and rotten fruit that would be ice cold." Id.

2           As to his time at RCCC, Plaintiff states:

3           4 times a week I would have to beg the deputies to get them to notify the
            kitchen staff that I had not received my special diet . . . or that it arrived
4           containing food that [he is] allergic to. Somedays after begging deputies to
            get [him] a lunch [Plaintiff] would not get anything. This was very
5           humiliating.

6           Id. at 4-5.

7   Plaintiff asserts that this caused him to suffer injury:

8           [D]ue to the deliberate indifference of [SCMJ] and [RCCC] staff and their
            superiors [he] was in pain for 5 days due to stomach issues, [he has]
9           missed numerous meals and have gone hungry on occasions and been
            humiliated begging staff repeatedly to bring me food that arrives very later
10          or inedible or at times not at all.

11          Id. at 4-6.

12          Plaintiff's third claim is that he was "forced to live with pain, discomfort, and

13  stress for over 8 months" because of "the actions and failures of the medial staff and deputies of

14  [SCMJ] and R.C.C.C." Id. at 7.  According to Plaintiff, he is an "ADA inmate" because when he

15  arrived at SCMJ, he had "complete and partial tears to the ligaments around [his] knee." Id.

16  Plaintiff listed eleven instances where he did not "receive proper medical care," as follows:

17          . . .1. Not providing me with the proper knee brace per doctors (sic) order.
            2. Giving me pain killers that I'm not supposed to take due to my high
18          blood pressure. 3. Failing to respond to medical request in timely manner
            if at all. 4. Denying me adequate physical therapy sessions. 5. Denying me
19          adequate and timely visits to specialist 6. Denying me a M.R.I. for
            months. 7. Forcing me to travel to medical appointments for 30 to 40
20          minutes in a cage that required me to bend my knee in manner that cause
            me pain for 30 to 40 minutes to get there and 30 to 40 minutes to get back.
21          8. Not allowing me the knee surgery I want an (sic) need so I can state my
            rehabilitation. 9. Failure to properly document my injuries at the doctor
22          visits and examinations I had while in the [SCMJ] and [RCCC]. 10.
            Failure to respect the extent of my injury. 11. Failure to take my
23          complaints about my injuries seriously enough to properly document
            them.

24
            Id. at 7-8.
25

26  / / /

27  / / /

28  / / /

4

1             Plaintiff's final claim is that both SCMJ and RCCC failed to provide him

2    "adequate and consistent" mental health care. Id. at 9. According to Plaintiff, "the supervisors

3    over the medical staff and deputies at these two facilities have a duty to ensure that their

4    subordinates are actually providing proper health care." Id. Plaintiff listed eight examples of this

5    alleged "fail[ure] in their duties," as follows:

6                        1. They have failed and refused to respond to mental health request (sic) in
                         a timely manner if at all.

7                        2. Failure to properly document my mental health issues.
                         3. Not providing a confidential space to discuss my mental health issues.

8                        4. Failure to respond to mental health grievances.
                         5. Omitting very relevant information in my medical file.

9                        6. Failure to do wellness check-ups.
                         7. Failure to follow the guidelines of the 'Mays Decree.'

10                       8. Failure [to] supervise subordinates.

11            Id. at 9-10.

12            Plaintiff asserts that, due to the above actions or inactions, he is "suffering, unable

13   to sleep, stressed, filled with anxiety, thinking negative, rubbing [his] skin raw, having bad

14   dreams, wetting the bed and losing hope daily." Id. at 10.

15            Before Defendant responded to the complaint by way of the pending motion to

16   dismiss, Plaintiff filed an amended complaint, ECF No. 14, requesting an injunction. Plaintiff

17   asserted that his civil rights continue to be violated and listed twelve instances of such alleged

18   violations, all of which had occurred since Plaintiff's initial complaint.[2] See id. at 2-4.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   

26        [2]     The Court construes this pleading as a supplemental complaint under Federal Rule
     of Civil Procedure 15(d).  Though this pleading was filed without leave of court, and Defendants

27   challenge the sufficiency of Plaintiff's initial pleading, Rule 15(d) permits a supplemental
     complaint despite a defective underlying pleading.  The Court also notes that Defendants' motion

28   to dismiss addresses the allegations in both the original complaint and supplemental complaint.

1

## II. DISCUSSION

2        In their motion to dismiss, Defendants argue: (1) Plaintiff failed to exhaust

3    administrative remedies; (2) Plaintiff fails to allege a causal link between the alleged deprivation

4    of civil rights and the named defendants; (3) Plaintiff fails to plead facts sufficient to support

5    municipal liability under Monell; (4) Plaintiff's supplemental pleading fails to provide fair notice

6    of claims for relief against Defendants; and (5) Plaintiff is not entitled to a preliminary injunction.

7    See ECF No. 16, pgs. 1-2.

8        **A.    Exhaustion**

9        Prisoners seeking relief under § 1983 must exhaust all available administrative

10   remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

11   regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

12   Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  The Supreme Court addressed the exhaustion

13   requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to

14   specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an

15   affirmative defense which must be pleaded and proved by the defendants; (2) an individual

16   named as a defendant does not necessarily need to be named in the grievance process for

17   exhaustion to be considered adequate because the applicable procedural rules that a prisoner must

18   follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does

19   not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

20   The defendant bears burden of showing non-exhaustion in the first instance.  See Albino v. Baca,

21   747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the

22   grievance process was not available, for example because it was thwarted, prolonged, or

23   inadequate.  See id.

24        Here, Defendants argue that Plaintiff did not exhaust administrative remedies

25   because, in Plaintiff's complaint he states, "by law I don't have to." See ECF No. 16, pg. 5

26   (quoting ECF No. 1, pgs. 3, 4, 7, 10). The Court does not agree because "[f]ailure to exhaust

27   under the PLRA is 'an affirmative defense the defendant must plead and prove.'"  Albino v. Baca,

28   747 F.3d 1162, 1166 (9th Cir. 2014) (quoting Jones v. Bock, 549 U.S. 199, 204 (2007)).  Courts

1  may address exhaustion at the pleading stage only if failure to exhaust is clear on the face of the

2  complaint, and otherwise should decide exhaustion in the context of a motion for summary

3  judgment.  See id.  Here, Plaintiff stated he did not believe he needed to file grievances about

4  these issues but that is not to say that Plaintiff did not file such grievances.  Indeed, in Plaintiff's

5  complaint, he states "none of my 'grievances' got responded to." ECF No. 1, pg. 4. Accepting the

6  allegations in the complaint as true, as the Court must, his contention indicates that Plaintiff did in

7  fact file grievances. Thus, from the face of the original complaint, it is not clear that Plaintiff

8  failed to exhaust.  See Hannah v. Ramirez, 2020 WL 39196, at *2 (S.D. Cal. 2020), report and

9  recommendation adopted, 2020 WL 475297 (S.D. Cal. 2020) (finding, where the plaintiff wrote

10 grievances but did not clearly exhaust administrative remedies, that the failure to exhaust was not

11 clear from the face of the complaint); cf. Bradnax v. Cal., 2020 WL 3961656 (E.D. Cal. 2020)

12 (holding that failure to exhaust was clear on the face of the complaint when the plaintiff alleged

13 he had "bypassed" the inmate grievance system); Wynn v. Escarcega, 2021 WL 3539709, at *1

14 (E.D. Cal. 2021) (holding that failure to exhaust was clear on the face when the plaintiff alleged

15 that he "filed his complaint prior to exhausting").  Further, in Plaintiff's reply to Defendants'

16 motion to dismiss, Plaintiff explained that he did file grievances and attached copies of multiple

17 grievances he filed. See ECF No. 19, pg. 3; pgs. 12-25 (Exhibit B).

18          Given that exhaustion is an affirmative defense, and prisoners are not required to

19 demonstrate exhaustion in the original complaint, dismissal is not appropriate on that basis.  See

20 Jones v. Bock, 549 U.S. 199 (2007). Once Defendants raised the issue of exhaustion, Plaintiff

21 provided sufficient evidence in his opposition brief to show he did file such grievances. See ECF

22 No. 19, pgs. 12-25 (Exhibit B).  Finally, while many of the attached grievances are illegible, the

23 Court is able to discern dates in those documents which were before Plaintiff filed his complaint,

24 and explanations that addressed the issues raised in Plaintiff's complaint. See ECF No. 19, pgs.

25 12-25 (Exhibit B). Thus, the Court recommends that Defendant's motion to dismiss on the basis

26 of exhaustion be denied.

27 / / /

28 / / /

7

1          **B.      Causal Link**

2          To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual

3  connection or link between the actions of the named defendants and the alleged deprivations.  See

4  Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

5  person 'subjects' another to the deprivation of a constitutional right, within the meaning of

6  § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

7  an act which he is legally required to do that causes the deprivation of which complaint is made."

8  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations

9  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

10  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth

11  specific facts as to each individual defendant's causal role in the alleged constitutional

12  deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

13          Supervisory personnel are generally not liable under § 1983 for the actions of their

14  employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

15  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

16  violations of subordinates if the supervisor participated in or directed the violations.  See id.

17  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation

18  of constitutional rights and the moving force behind a constitutional violation may be liable even

19  where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San

20  Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  A supervisory defendant may also be

21  liable where he or she knew of constitutional violations but failed to act to prevent them.  See

22  Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

23          When a defendant holds a supervisory position, the causal link between such

24  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

25  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

26  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

27  civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

28  Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

1   official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S.

2   662, 676 (2009).

3          Here, Defendants argue that Plaintiff "fails to link any named defendant to an act

4   or omission leading to a cognizable civil rights violation." ECF No. 16, pg. 7.  The Court agrees.

5   Plaintiff alleges that named Defendants Cooper, Vaden, and Lee are responsible for ensuring their

6   employees protect the inmates' constitutional rights. See ECF No. 19, pgs. 5-6. However,

7   Plaintiff does not allege that any one of them participated in or directed the violations,

8   implemented a policy that is the force behind the constitutional violations, or knew about the

9   violations and failed to prevent them.  Because Plaintiff does not allege any facts relating any of

10  the alleged constitutional violations to the Defendants in this way, the named Defendants should

11  be dismissed for lack of a causal link to Plaintiff's claim.

12         The Court acknowledges that Plaintiff attached a declaration from a fellow inmate

13  to his opposition which indicates that Defendant Cooper was aware of the issue of leaking toilets

14  at RCCC and did nothing to resolve the issue. See ECF No. 19, pgs. 27-28. While  such facts

15  could be sufficient to show a causal link between Defendant Cooper and the alleged constitutional

16  violation, the declaration was attached to a reply and the Court can only consider the complaint

17  when assessing a motion to dismiss. Therefore, the Court will recommend that Defendants'

18  motion to dismiss, which is based on the lack of allegations supporting a causal link, be granted,

19  and that Plaintiff be directed to file an amended complaint that includes sufficient facts to support

20  a causal link between the named defendants and the alleged constitutional violations.

21         **C.   Municipal Liability**

22         Municipalities and other local government units are among those "persons" to

23  whom § 1983 liability applies.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

24  Counties and municipal government officials are also "persons" for purposes of § 1983.  See id.

25  at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989).  A local

26  government unit, however, may not be held responsible for the acts of its employees or officials

27  under a respondeat superior theory of liability.  See Bd. of County Comm'rs v. Brown, 520 U.S.

28  397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not of

9

1   the actions of its employees or officers.  See id.  To assert municipal liability, therefore, the

2   plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

3   custom of the municipality.  See id.

4              Defendants argue that "Plaintiff identifies no County of Sacramento policy which

5   was a moving force behind Plaintiff's alleged injuries at the two jail facilities." ECF No. 16, pg.

6   8. Further, Defendants assert that "the 'Mays Decree' is not a pleading shortcut for plaintiffs to

7   assert a blanket "bad policy," circumventing *Monell* and general pleading requirements." ECF

8   No. 22, pg. 5. The Court agrees. Plaintiff asserts that "the County is in violation of the 'Mays

9   Decree'" and argues that by violating this policy, the County is subject to municipal liability.

10  ECF No. 19, pg. 9. But finding municipal liability requires that the County's policy, custom, or

11  practice is what gives rise to the alleged constitutional violations. See Bd. of County Comm'rs v.

12  Brown, 520 U.S. 397, 403 (1997).  Plaintiff alleges the opposite – that the County's policy is to

13  protect inmates' constitutional rights and SCMJ and RCCC are not abiding by that policy. See

14  ECF No. 19, pg. 9. While the findings in the monitoring reports, as required by the Mays Decree,

15  have been relied on to show a custom of not providing sufficient staffing which caused

16  constitutional violations, Plaintiff here does not make such a claim. See No. 12-1304 (E.D. Cal.

17  Jan. 25, 2024), ECF No. 19. Thus, the Court will recommend that Defendants' motion to dismiss

18  under Monell be granted and that Plaintiff be directed to file an amended complaint that includes

19  sufficient facts to show a county policy, custom, or practice that resulted in the alleged

20  constitutional violations.

21          **D.      Preliminary Injunction**

22              Plaintiff agrees with Defendants that, because he was moved from SCMJ, his

23  demand for a preliminary injunction is now moot.  The Court will therefore recommend dismissal

24  of Plaintiff's request for a preliminary injunction.

25  / / /

26  / / /

27  / / /

28  / / /

1

## III. CONCLUSION

2          Based on the foregoing, the undersigned recommends as follows:

3          1.     Defendants' motion to dismiss, ECF No. 16, be granted in part and denied

4   in part as explained herein.

5          2.     Plaintiff's original complaint and supplemental complaint be dismissed

6   with leave to amend.

7          3.     Plaintiff be directed to file a first amended complaint.

8          These findings and recommendations are submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

10  after being served with these findings and recommendations, any party may file written

11  objections with the court.  Responses to objections shall be filed within 14 days after service of

12  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

13  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14

15  Dated:  January 24, 2025

16                                              _____
                                                DENNIS M. COTA
17                                              UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

11